# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 3, 2009

Charles R. Fulbruge III
Clerk

No. 08-20734

CHANDRASHEKHAR B. THANEDAR,

Plaintiff-Appellant

v.

TIME WARNER, INC., TIME WARNER CABLE, INC., TEXAS AND
KANSAS CITY CABLE PARTNERS, L.P., TIME WARNER
ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP, TIME
WARNER COMMUNICATIONS OF HOUSTON, L.L.P., AND TIME
WARNER ENTERTAINMENT COMPANY, L.P.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
USDC No. 4:06-CV-02139

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Chandrashekhar B. Thanedar appeals the district court's entry of judgment pursuant to Federal Rules of Civil Procedure 50 and 52 on his claims for whistleblower retaliation in violation of Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, breach of contract, and violations of the

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Texas Payday Law, Tex. Lab. Code Ann. § 61.001 *et seq.* (Vernon 2006). For the reasons stated below, we affirm.

## I. FACTUAL BACKGROUND

From 2000 to 2004, Time Warner Cable-Houston Division (TWC-Houston) employed Thanedar as its Director of Finance. At the time of Thanedar's employment, TWC-Houston was part of a partnership between Comcast Corporation (Comcast), which owned a fifty-percent interest in the partnership and is not a party to this suit, and other Time Warner Cable (TWC) entities. This partnership was known as Texas and Kansas City Cable Partners LLP (TKCCP). TWC is a subsidiary of Time Warner Inc. (TWI).

In the spring of 2003, Thanedar applied for the position of controller at TWC-Houston. He did not receive the promotion. Instead, TWC-Houston hired Richard Gray, an outside applicant. On June 17, 2003, Thanedar filed a complaint with Marla Barnard, then-Vice President of Human Resources for TWC-Houston, asserting that his pay grade and salary should be equal to or higher than the controller position. Barnard testified that she thoroughly investigated this complaint and concluded that Thanedar's pay grade and salary were correct. Thanedar filed a second complaint on August 29, 2003 requesting a formal written response as to why his internal bid for the position was denied. After receiving Barnard's response, Thanedar filed a charge with the Equal Employment Opportunity Commission (EEOC), asserting that he was not promoted to controller because of his Indian heritage.

According to the testimony of George Fritz Fryer, then-Vice President of Finance for TWC-Houston, Thanedar's job performance deteriorated over the next several months. Fryer reprimanded Thanedar on October 17, 2003 for relying too heavily on e-mail rather than in-person communication and for excessive absences. On November 11, 2003, Thanedar filed an amended charge with the EEOC alleging that Fryer unlawfully retaliated against him for filing

his first complaint by writing him up for excessive absences. In December of 2003, Fryer testified that he presented Thanedar with his performance evaluation, which highlighted concerns about Thanedar's willingness to accept responsibility and effectively resolve problems.

In January, Thanedar met with Fryer and Barnard to discuss his performance evaluation. Fryer testified that Thanedar raised the issue of accounting irregularities within TWC-Houston's finance division and called for a Sarbanes-Oxley review at this meeting. Anthony DePaoli, Director of Internal Audit at TWI, testified that Thanedar called him in January of 2004 to report accounting concerns, rather than using a confidential hotline.

DePaoli and Steve Fiedler, Vice President of Internal Audit for TWI, conducted a conference call with Thanedar to discuss his concerns. Based on Thanedar's allegations, a team of auditors, including DePaoli, traveled to TWC-Houston to perform audit tests to determine the validity of Thanedar's concerns. The audit took several weeks to perform. DePaoli testified that after concluding the audit, he could not corroborate Thanedar's allegations.

Fryer testified that Thanedar's performance continued to deteriorate over the next several months. According to Fryer, Thanedar failed to maintain good working relationships with the accounting department and the controller. Furthermore, Barnard testified that Thanedar shamed a subordinate via a public e-mail rather than handling the matter privately. On October 22, 2004, Thanedar was terminated for failure to meet performance expectations.

## II. PROCEDURAL HISTORY

Thanedar filed a complaint with the Occupational Safety and Health Administration (OSHA) on January 18, 2005. Thanedar had previously filed a separate lawsuit asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-17, and under 42 U.S.C. § 1981. In that lawsuit, Thanedar claimed that the appellees terminated his employment because of his race and

in retaliation for engaging in protected activity. The Title VII lawsuit was dismissed with prejudice on February 8, 2006.

On June 26, 2006, Thanedar filed the instant lawsuit in the district court asserting retaliation for whistleblowing in violation of 18 U.S.C. § 1514A. On January 4, 2008, the court assessed costs and sanctioned Thanedar for "troubling and indefensible" conduct during his deposition. During that deposition, Thanedar had asserted 325 objections and refused to answer any question he deemed helpful to the appellees. As a result, the court prohibited Thanedar from conducting any further discovery without the prior consent of the appellees. On May 14, 2008, the district court granted Thanedar's motion for deemed admissions. Prior to trial, the appellees moved for summary judgment; the district court denied this motion.

For unknown reasons, Thanedar moved for an evidentiary hearing on the issue of his deemed admissions. The district court conducted the hearing as part of the pretrial conference. During the hearing, the court withdrew the deemed admissions. The court then ordered the state law claims tried before a jury and the Sarbanes-Oxley claims tried before an advisory jury. The court also denied Thanedar's motion for a continuance.

At trial, the court set a timing order limiting the appellees to eight hours at trial and Thanedar to seventeen hours. When Thanedar went over his allotted time, the court provided additional time. During the course of trial, Thanedar accused opposing counsel of lying to the court on multiple occasions. He also made comments about the competency of opposing counsel in front of the jury. At the close of the evidence, the appellees moved for judgment as a matter of law, which the court granted. The court entered findings of fact and conclusions of law, dismissing the state law claims under Rule 50(a) and the Sarbanes-Oxley claims under Rule 52(a).

## III. DISCUSSION

### A. The District Court's Discretionary Rulings

Thanedar raises several objections to the district court's discretionary rulings. He argues that these rulings deprived him of a fair trial and his constitutional right to due process. We address each of the rulings separately.

Thanedar argues that the district court's entry of a timing order deprived him of his due process rights. Ordinarily, we review the district court's timing order for abuse of discretion. *See United States v. Gray*, 105 F.3d 956, 963 (5th Cir. 1997). In this instance, however, Thanedar failed to raise an objection to the timing order. Thus, we review for plain error. *Id.*

We find that the district court's timing order was not plainly erroneous. "[A] district judge has broad discretion in managing his docket, including trial procedure and the conduct of trial." *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). In setting the amount of time for trial, the district court considered each party's estimate of the time needed. The court continually reminded both parties of the time used and the time remaining for presentation of each side's case. The court also offered suggestions to Thanedar on how to focus his questioning of witnesses so as to preserve his time. We find no evidence in the record that the order was issued or enforced in a manner that deprived Thanedar of due process.

Thanedar next argues that the district court violated his due process rights when it denied his motion to withdraw his jury demand. Appellees respond that this issue is moot, as the court granted their motion for judgment and the case was never submitted to the jury. We agree. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Once the district court granted the appellees' motion for judgment, the jury could have absolutely no influence on the outcome of the case. At that point, Thanedar no

longer had any remaining interest in the outcome of his motion to withdraw his jury demand. *Cf. Baranowski v. Hart,* 486 F.3d 112, 126 (5th Cir. 2007) (holding plaintiff's demand for jury trial moot once court granted summary judgment).

Thanedar claims that the district court's decision to withdraw the deemed admissions should be reversed. We review withdrawal of admissions for abuse of discretion. *Carney v. IRS* (*In re Carney*), 258 F.3d 415, 419 (5th Cir. 2001). A district court may permit the withdrawal of an admission if the withdrawal would "promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

We conclude that the withdrawal advanced the presentation of the case on the merits. The appellees cite two examples of issues at trial that would not have been developed but for the withdrawal of the admissions: the reasons for Thanedar's termination and the consolidation of TKCCP's financial results with those of TWI. Thanedar argues, without citing any authority, that the two issues are irrelevant to the case. On the contrary, these issues were critical for determining whether Thanedar was employed by a publicly-traded company and suffered retaliation for whistleblowing. *See* 18 U.S.C. § 15141A. The withdrawal of the admissions thus satisfies the first prong of the test under Rule 36(b).

We likewise find that the withdrawal of the admissions did not prejudice Thanedar. Prejudice may occur where a party faces "special difficulties . . . caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Am. Auto. Ass'n., Inc., v. AAA Legal Clinic of Jefferson Crooke, P.C.,* 930 F.2d 1117, 1120 (5th Cir. 1991). However, "[t]he necessity of having to convince a trier of fact of the truth of a matter erroneously admitted is not sufficient." *N. La. Rehab. Center, Inc. v. United States*, 179 F. Supp. 2d 658, 663 (W.D. La. 2001) (quoting *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994)).

Thanedar did not suffer prejudice due to the timing of the court's ruling. Testimony from the appellees' depositions and their production of documents should have put Thanedar on notice that the appellees were taking a position contrary to the deemed admissions. Any prejudice from the withdrawal of the admissions resulted "from the inaccuracy of the admissions rather than the stage of the proceedings at which the [appellees] sought to amend [their] admissions." *Prusia*, 18 F.3d at 640. Moreover, Thanedar voluntarily put the issue of the admissions back into consideration by requesting an evidentiary hearing. Therefore, he cannot claim to have been unfairly surprised by the district court's ruling. *Cf. Am. Auto. Ass'n.,* 930 F.2d at 1120 (finding clear prejudice where district court sua sponte withdrew admissions after trial). The district court did not abuse its discretion in granting the appellees' motion to withdraw the deemed admissions.

During the discussion at the pretrial conference on the issue of whether there would be a jury trial, Thanedar moved for a continuance. The district court denied this motion. We review the grant or denial of a continuance for abuse of discretion resulting in serious prejudice. *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007). Thanedar's sole argument for a continuance is that he suffered prejudice from the withdrawal of the admissions. Having concluded that the withdrawal of the admissions did not result in prejudice to him, we likewise find that Thanedar has not made a sufficient showing of prejudice resulting from the denial of his motion for a continuance. We will not reverse the district court's decision in the absence of a sufficient showing of prejudice. *See Johnson v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1571 (5th Cir. 1989).

## B. The Appellees' Motions for Judgment

We now turn to the district court's grant of the appellees' motion for judgment on all claims.[1] We review a judgment made under Rule 50(a) de novo. *Hagan v. Echostar Satellite, L.L.C.,* 529 F.3d 617, 622 (5th Cir. 2008). In reviewing a grant of judgment under Rule 52(c), we review the district court's conclusions of law de novo and its findings of fact for clear error. *Samson v. Apollo Res. Inc.*, 242 F.3d 629, 632-33 (5th Cir. 2001). When the district court's findings of fact are based on the credibility of a witness, however, we afford even greater deference to those findings. *Id.*

The district court held that all three of Thanedar's claims were barred by the doctrine of res judicata, as the claims should have been litigated in his Title VII lawsuit. Res judicata, or claim preclusion, bars the litigation of claims that either have been litigated or should have been litigated in an earlier lawsuit. *Southmark Corp. v. Coopers & Lybrand* (*In re Southmark Corp.*), 163 F.3d 925, 934 (5th Cir. 1999). The test for claim preclusion has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgement on the merits; (4) the same claim or cause of action was involved in both claims." *Id.*

---

[1] At the outset, we observe that the appellees erroneously brought a single motion for judgment as matter of law under Federal Rule of Civil Procedure 50(a). Since the Sarbanes-Oxley claim was tried before an advisory jury, the appellees should have brought a motion for judgement on partial findings under Federal Rule of Civil Procedure 52(c). The district court orally granted the appellees' motion but subsequently corrected the error and treated the motion as one for judgment under Rule 50(a) on the state law claims and one for judgment under Rule 52(a) on the Sarbanes-Oxley claim. We find that the error did not prejudice Thanedar; on the contrary, it favored him. Rule 50(a) requires that the evidence be considered in the light most favorable to the plaintiff. Fed. R. Civ. P. 50(a). Rule 52(a) only requires weighing the evidence to determine whether the plaintiff has proven his case. Fed. R. Civ. P. 52(a). Moreover, the district court complied with Rule 52(a)'s requirement that the court state its findings of fact and conclusions of law separately.

Thanedar does not contest the first or the third elements of the test. On appeal, he first argues that his Title VII claim was not identical to his Sarbanes-Oxley claim. To determine whether the claims are in fact identical, we apply the transactional test, which considers whether the two claims rest on "the same nucleus of operative facts." *Id.* (quoting *Bank of Lafayette v. Baudoin* (*In re Baudoin*), 981 F.2d 736, 743 (5th Cir. 1993)). Under this approach, the operative facts define the claims, not the relief requested, legal theories, or rights asserted. *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). If the operative facts are the same, the prior judgment's preclusive effect "extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Petro-Hunt v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004) (alteration in original) (quoting Restatement (Second) of Judgments § 24(1) (1992)).

We agree with the district court that all three of Thanedar's claims arise from the same core set of facts. Thanedar asserts three different claims of relief, all of which arise from the fact that he suffered an adverse employment action and that his employer ultimately terminated his employment out of illegal and retaliatory motives. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006) (holding that plaintiff's Sarbanes-Oxley claim and Title VII retaliation claims involved the same nucleus of operative facts, including the time, cause, and circumstances of plaintiff's termination); *see also Nelson v. AMX Corp.*, No. 3:04-cv-1350-H, 2005 WL 2495343, at *6 (N.D. Tex. Sept. 22, 2005) (holding that the same nucleus of operative fact existed between an employee's claim under her employment contract and subsequent discrimination claim). The fact that the retaliatory motive asserted in the Title VII suit was not identical to that of the Sarbanes-Oxley claim does not bar a finding of res judicata. We have previously held that claims asserting different grounds for wrongful termination

may nevertheless be subject to claim preclusion. *See, e.g.*, *Miller v. U.S. Postal Serv.*, 825 F.2d 62, 64 (5th Cir. 1987) (sex and disability discrimination); *Fleming v. Travenol Labs., Inc.*, 707 F.2d 829, 830 (5th Cir. 1983) (race and sex discrimination). As the district court aptly noted, both of Thanedar's lawsuits focus "on one critical issue: whether Thanedar's employer had a legitimate and lawful reason for taking the adverse employment action of which he complains." This is sufficient to establish a "same nucleus of operative fact." *In re Southmark*, 163 F.3d at 934.

Thanedar argues that the district court presiding over his Title VII lawsuit lacked subject matter jurisdiction to hear his Sarbanes-Oxley claim. "It is black-letter law that a claim is not barred by res judicata if . . . the court rendering judgment lacked subject-matter jurisdiction over a claim." *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989). Under Sarbanes-Oxley, once 180 days have elapsed after the filing of a complaint with OSHA, a plaintiff may bring suit in federal district court if the Secretary of Labor has not acted on the matter. *See* 18 U.S.C. § 1514A(b)(1)(B). Thanedar filed his administrative complaint with OSHA on January 18, 2005. The 180-day waiting period expired on July 18, 2005. At that point, Thanedar could have filed suit under Sarbanes-Oxley and moved to consolidate the claim with his Title VII lawsuit, which was still pending. However, Thanedar waited until June 26, 2006 to file his Sarbanes-Oxley claim. This type of piecemeal litigation undercuts the finality of judgments, which is precisely what claim preclusion seeks to ensure. *See Nevada v. United States*, 463 U.S. 110, 129–30 (1983). We conclude that the district court presiding over Thanedar's Title VII lawsuit was competent to adjudicate his claim under 18 U.S.C. § 1514A and there was no impediment to consolidation of the claims. Thanedar therefore should have filed a motion to consolidate his Sarbanes-Oxley claim with his claims under Title VII.

Thanedar next argues that the appellees cannot assert res judicata because they have acquiesced to splitting the claims. In *SuperVan, Inc., v. City of San Antonio (In re SuperVan)*, 92 F.3d 366 (5th Cir. 1996) we held that "a second action may be brought by a plaintiff on the same cause of action if "the parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein." *Id.* at 371 (alteration in original) (quoting Restatement (Second) of Judgments § 26(1)(a)).

Thanedar asserts that the appellees opposed his efforts to consolidate the claims when he sought a continuance in his Title VII suit in order to find new counsel. While Thanedar referenced his desire to find counsel to pursue claims under the Sarbanes-Oxley Act, in the end, his motion was one for a continuance. The appellees opposed this motion on the grounds that the plaintiff had been dilatory in prosecuting his case. Such opposition, however, cannot be construed as acquiescence to claim splitting.

Thanedar also cites the joint motion for a continuance filed by the parties on March 29, 2007 as evidence of acquiescence. In that motion, the parties requested a continuance until this court had ruled on the dismissal of Thanedar's Title VII suit. The parties also noted that if the dismissal of the Title VII claim was reversed and remanded, then it should be consolidated with the Sarbanes-Oxley lawsuit.[2] This scenario is readily distinguishable from the one presented in *SuperVan*. In that case, the bankruptcy court sua sponte raised the issue of whether the two suits currently pending should be consolidated. 92 F.3d at 369. Counsel for the defendant explicitly stated that his client preferred to litigate the two lawsuits separately. *Id.* In this instance, the appellants only

---

[2] We affirmed the dismissal with prejudice of Thanedar's Title VII suit. *Thanedar v. Time Warner Commc'ns of Houston, L.L.P.,* 227 F. App'x 385 (5th Cir. 2007) (unpublished).

agreed to consolidate as a contingency if this court reinstated Thanedar's Title VII claim. According to the Restatement:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) of Judgments § 26 cmt. a. Thanedar's Title VII suit had already been dismissed with prejudice; the fact that it was pending on appeal does not mean that it was still "pending" for the purposes of waiving res judicata. *See Stoll v. Gottlieb*, 305 U.S. 165, 170 (1938) (holding that a judgment determining a right under a federal statute is final until reversed, modified, or set aside).

Finally, Thanedar argues that by participating in the OSHA proceedings, the appellees waived their right to assert res judicata. This argument likewise fails, as the Title VII suit was dismissed well after the 180-day waiting period for the OSHA complaint had expired. Nor could the appellees have moved for consolidation of an administrative complaint with a proceeding in federal court. To conclude, we affirm that all three claims were barred by res judicata. As a result, we do not reach the district court's alternative holdings.

**C. The Preclusion Order**

In its order entering judgment for the appellees, the district court included a preclusion order against Thanedar. This order prevented him from filing any motions, actions, or complaints in the United States District Court for Southern District of Texas that directly or tangentially raised an issue adjudicated in the instant case without first obtaining leave of the court. Thanedar appeals this decision, arguing that it violates his due process rights and was not based on any

evidence in the record. A preclusion order is akin to an anti-suit injunction and we therefore review for abuse of discretion. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 626 (5th Cir. 1996).

It is well-settled that a plaintiff's *pro se* status does not give him a "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986). There is no constitutional right to prosecute frivolous actions, and preclusion orders are appropriate tools for deterring vexatious filings. *Kaminetzky v. Frost Nat'l Bank of Houston*, 881 F. Supp. 276, 277–78 (S.D. Tex. 1995). When issuing such an order, however, a court must ensure that it is "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson*, 808 F.2d at 360.

We find that there was ample basis for the district court to enter a preclusion order in this case. As the district court noted, Thanedar exhibited a disturbing pattern of behavior in his Title VII lawsuit. In that suit, after the court had denied his motion for a continuance and granted the appellees' motion to compel discovery, Thanedar filed a notice of appeal, despite the fact that such rulings are not "final orders" subject to appellate review. Thanedar also refused to attend his deposition, failed to respond to the appellees' discovery requests, and did not comply with the court's orders. Consequently, the district court dismissed his Title VII suit with prejudice. *See Thanedar v. Time Warner Commc'ns of Houston, L.L.P.*, No. 4:04-cv-04188 (S.D. Tex. Feb. 8, 2006). A panel of this court affirmed the dismissal, observing that Thanedar had engaged in "serially contumacious conduct" and asserted a "frivolous" due process claim on appeal. *Thanedar v. Time Warner Commc'ns of Houston, L.L.P.*, 227 F. App'x 385, 387 (5th Cir. 2007) (unpublished). Thanedar filed a petition for certiorari, which the Supreme Court denied. *Thanedar v. Time Warner Commc'ns of Houston, L.L.P.*, 128 S. Ct. 1077 (2008).

Thanedar continued to employ obstructive tactics while litigating his Sarbanes-Oxley claim. As noted earlier, the district court imposed sanctions on Thanedar for refusing to answer questions during his deposition. In addition, Thanedar accused defense counsel of lying to the court at various points and made insulting comments regarding the competency of Time Warner's counsel in front of the jury. The district court concluded that this pattern of behavior represented "one of the grossest abuse[s] of the federal civil process the undersigned has observed in the course of twenty-two years on the federal bench." *Thanedar v. Time Warner Inc., et al.*, No. 4:06-cv-02139, at *7 (S.D. Tex. Oct. 7, 2008).

We also find that the preclusion order was narrowly tailored so as to preserve Thanedar's access to the courts. *See Farguson*, 808 F.2d at 360. The order only enjoined Thanedar from filing further motions or claims relating to the issues presented in the instant lawsuit in the district court without leave of the court. Thanedar requested and ultimately obtained leave to file this appeal, a motion to stay enforcement pending appeal, and a motion to oppose appellees' request for an appellate bond. We therefore conclude that the order was not overly broad and that the district court did not abuse its discretion.

## D. Thanedar's Motion for New Trial and to Amend Judgment

Pursuant to the court's preclusion order, Thanedar moved for leave to file a motion for new trial and to amend the judgment. The district court denied leave to file this motion. As we have already determined that the preclusion order was within the sound discretion of the district court, we find that the denial of leave to file this motion was not an abuse of discretion. The district court's denial of leave did not block Thanedar's access to the courts. Furthermore, we observe that Thanedar's underlying motion for a new trial and to amend the judgment largely restates his appeal on the merits. *Youmans v. Simon*, 791 F.2d 341, 349 (5th Cir. 1986). As we have already affirmed the

district court's decision on the merits, there would be no need for us to consider this motion. *See id.* The district court's denial of leave to file the motion was therefore not an abuse of discretion.

## E. Thanedar's Motion for Recusal

Thanedar also appeals the denial of leave to file a motion for recusal. Under 28 U.S.C § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." A litigant seeking to disqualify a judge "must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994). We review a denial of a motion to recuse for abuse of discretion. *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).

We conclude that the motion to recuse was untimely filed. Of the eighteen record references Thanedar cites in support of his motion, seventeen occurred during pretrial or trial. The only post-trial reference is the preclusion order. Yet Thanedar did not file his motion for recusal until five months after trial. Allowing disqualification to be raised at such a late stage "converts the serious and laudatory business of insuring judicial fairness into a mere litigation stratagem" as it encourages an attorney "to delay making a § 455(a) motion as long as possible if he believes that there is any chance that he will win at trial." *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982). Thanedar should have raised this issue far earlier.

Furthermore, we find no basis in the record to support Thanedar's allegations. Thanedar cites a number of examples of the district court's supposed bias. Several of these examples consist of neutral statements made by the court that do not demonstrate any hint of bias. Other examples are actually attempts by the court to assist both parties to proceed more efficiently so as to avoid wasting their remaining time. The remaining examples, at best,

demonstrate nothing more than the court's temporary frustration. Critical or disapproving comments to counsel or the parties ordinarily do not support a claim of bias. *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 216 n.6 (5th Cir. 1998). To conclude, Thanedar's motion for recusal was untimely and lacks any factual basis. Therefore, the district court did not abuse its discretion by denying Thanedar leave to file it.

## F. The Appellees' Motion for Bill of Costs

Thanedar appeals the district court's grant of the appellees' motion for their bill of costs. Under the Federal Rules of Civil Procedure, costs other than attorney's fees should normally be awarded to the prevailing party. Fed. R. Civ. P. 54(d)(1). Such costs include the fees for witnesses and for trial transcripts necessarily obtained for use in the case. 28 U.S.C. § 1920(2)-(3). We review an award of a bill of costs for abuse of discretion. *Fogleman v. Arabian Am. Oil Co.*, 920 F.2d 278, 285 (5th Cir. 1991).

Thanedar first argues that the appellees filed their bill of costs too late. We find this argument to be without merit. The district court ordered the appellees to submit proposed findings of fact and conclusions of law, along with a separate bill of costs, by July 2, 2008. The court sua sponte extended the deadline for filing the proposed findings of fact and conclusions of law to July 14, 2008. This order does not explicitly state that the extension also applies to the deadline for filing the bill costs. We note, however, that the court requested that appellees "do the findings of fact and conclusions of law showing that [the bill of costs] is recoverable." Arguably, the court's order could be interpreted to cover the bill of costs as well. Moreover, the court explicitly overruled Thanedar's objection that the filing was untimely, finding that the appellees' July 14 filing was in full compliance with its previous instructions. Given our deferential standard of review, we do not find that this was an abuse of discretion.

16

Thanedar next argues that the district court erred when it overruled his objection that Stephen Roppolo was not an attorney of record and not authorized to file a bill of costs for the appellees. This argument is without merit. Mr. Roppolo represented all the appellees beginning October 1, 2007, except at trial, where he represented all appellees except TWI. On July 11, 2008, TWI filed a motion to resume its representation by Mr. Roppolo, but due to a clerical error in docketing, the substitution order was not executed until October 14. When it issued the substitution order, the court made the effective date July 11 in order to correct the error. This action was well within the trial court's discretion, as Rule 60(a) allows a court to correct a "clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). The court may do so "on its own [motion] with or without notice." *Id.* Moreover, the bill of costs was jointly filed by the appellees, all of whom, with the exception of TWI, were continuously represented by Mr. Roppolo since October 1, 2007. The district court did not abuse its discretion in overruling Thanedar's objection.

We now turn to Thanedar's argument that the court should not have awarded certain costs to the appellees. "We accord the district court great latitude" in determining that particular costs are necessary to the case. *Fogelman*, 920 F.2d at 286. Thanedar first objects to the award of the costs of expedited trial transcripts. We have previously held that the extra cost of obtaining a trial transcript on an expedited basis is not taxable absent prior court approval unless the special character of the litigation necessitates the expedited receipt of the transcripts. *Id.* Here, the court found that the trial transcripts were necessary for the appellees to ensure that they could provide findings of fact and conclusions of law properly supported by the record evidence. In light of the fact that the district court gave the appellees forty-two days to obtain a 1270-page transcript, review it, and submit detailed findings of fact, the

17

court's decision to award the costs of obtaining the transcript on an expedited basis was not an abuse of discretion.

We likewise affirm the district court's decision to award appellees the cost of DePaoli's lodging expenses for one additional night. Thanedar argues that these extra costs should not be recovered because he was not consulted prior to their incurrence. He does not contest the district court's finding that DePaoli was one of the most critical witnesses in the case and that DePaoli's additional lodging expenses were due to the inordinate amount of time Thanedar spent examining other witnesses, which prevented DePaoli from testifying as scheduled on May 28. A court may award fees where a witness is present "in necessary attendance on the court in readiness to testify." *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1552 (5th Cir. 1984) (quoting *Hurtado v. United States,* 410 U.S. 578, 584 (1973)). We find that the award of the additional lodging fees was not an abuse of discretion.

## G. Motions for Sanctions

Also pending before this court are cross motions for sanctions. The appellees request sanctions pursuant to Federal Rule of Appellate Procedure 38, which authorizes this court to award "just damages and single or double costs to the appellee" in cases where an appeal is found to be frivolous. This court also has the inherent authority to impose sanctions sua sponte. *Coghlan v. Starkey*, 852 F.2d 806, 808 (5th Cir. 1988).

While Thanedar's conduct during the litigation of this case is indeed disturbing, the district court has adequately addressed that conduct. Thanedar has already been sanctioned for "troubling and indefensible" conduct during his deposition. Moreover, the district court entered the preclusion order, which prevents him from filing further claims without leave of the court. Regarding his conduct on appeal, we do not find that sanctions are warranted in this instance, though it is a close question. We evaluate an appeal de novo to

determine if it is frivolous under Rule 38. *Topalian v. Ehrman*, 3 F.3d 931, 935 (5th Cir. 1993). Sanctions are appropriate when a party presents arguments that have been "squarely rejected by Fifth Circuit caselaw." *Macklin v. City of New Orleans*, 300 F.3d 552, 554 (5th Cir. 2002). As Thanedar's claims under Sarbanes-Oxley relate to a relatively new area of the law, we decline to impose sanctions so as to avoid unduly chilling advocacy.[3] *Id.* We likewise deny Thanedar's motion for sanctions as utterly without merit.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED. We DENY the appellees' and Thanedar's motions for sanctions.

---

[3] We admonish Thanedar, however, that a *pro se* litigant is not immune to sanctions. *See Stearman v. Comm'r Internal Revenue,* 436 F.3d 533, 538 (5th Cir. 2006).