**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2009

Charles R. Fulbruge III
Clerk

No. 08-11039

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA

Plaintiff - Appellee

v.

MARY MCMURRAY

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:06-CV-545

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

This dispute concerns the denial of a claim for accidental death benefits under a blanket accident insurance policy issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania. National Union denied coverage for the claim on the grounds that the circumstances of death did not fall within the policy's coverage. The district court agreed, granting summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

judgment in favor of National Union. The spouse of the decedent policyholder appeals that decision. For the following reasons, we AFFIRM.

## I. BACKGROUND

After a September 2004 wedding, Joe and Mary McMurray went on a honeymoon cruise with Oceania Cruises. Joe McMurray purchased the cruise with his Platinum Select Citibank Mastercard, which included a $1,000,000 accidental death or dismemberment insurance policy issued by National Union. As Joe's spouse, Mary McMurray was eligible for benefits under the policy. Among the covered hazards for which accidental death benefits were provided was injury or death that occurred while an insured person was "riding as a passenger in or on (including getting in or out of, or on or off of) any Common Carrier." The policy defined "common carrier" as "any licensed land, water or air conveyance operated by those whose occupation or business is the transportation of persons for hire." "Passenger" was defined as "a person not performing as a pilot, operator or crew member of a conveyance."

While on the cruise, the McMurrays purchased a separate whitewater rafting excursion operated by Rios Tropicales in Costa Rica. This excursion was charged to the McMurrays' cruise account and became an additional charge on Mr. McMurray's Citibank Mastercard. During the rafting trip, Mr. McMurray tragically was thrown from his raft and drowned. Ms. McMurray submitted a claim for accidental death benefits under the National Union policy. National Union denied the claim, concluding that the raft in which the McMurrays were riding was not a common carrier, and they were not passengers under the policy.

National Union then filed a declaratory judgment action. It sought a determination of the policy's coverage and a declaration that no benefits were owed. Ms. McMurray filed a counterclaim, alleging breach of express and implied warranties, breach of contract, breach of the duty of good faith and fair dealing, and breach of a Texas prompt payment of claims statute.

The district court granted summary judgment in favor of National Union. It held that benefits were not payable because Rios Tropicales was not a common carrier under the policy. National Union received a judgment as a matter of law on the counterclaims. Ms. McMurray timely appealed.

## II. DISCUSSION

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008). Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In determining whether a genuine issue as to any material fact exists, we must view the evidence in the light most favorable to the nonmoving party." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348-49 (5th Cir. 2008).

This is a diversity case involving interpretation of a contract entered in Texas. Texas substantive law controls. *Bexar County Hosp. Dist. v. Factory Mut. Ins. Co.*, 475 F.3d 274, 276 (5th Cir. 2007). Under Texas law, insurance policies are interpreted according to the ordinary rules of contract interpretation. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). The court's primary concern in construing the policy is to determine the intent of the parties. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "The terms used in the policy are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)). When a term is defined in the policy, that definition controls. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.

1997). "[I]f an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage for the insured will be adopted." *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

We close this litany of basic rules by noting one more. The fact of conflicting interpretations by parties in litigation does not prove ambiguity. *Commonwealth Lloyds Ins. Co. v. Downs*, 853 S.W.2d 104, 110 (Tex. App.—Fort Worth 1993, writ denied). It may only be evidence of zealous advocacy.

Ms. McMurray alleges that the district court erred by looking beyond the policy's definition of "common carrier." In interpreting the policy definition, the district court noted that Texas law similarly defines "common carriers" as "[t]hose in the business of carrying passengers and goods who hold themselves out for hire by the public." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 213 (Tex. 1989). The Texas common-carrier analysis focuses on the business of transportation and "whether the *business* of the entity is public transportation or whether such transportation is 'only incidental' to its primary business." *Speed Boat Leasing, Inc. v. Elmer*, 124 S.W.3d 210, 213 (Tex. 2003) (emphasis in original). The district court concluded that because transportation was merely incidental to Rios Tropicales's primary purpose of entertainment, it was not a common carrier.

Ms. McMurray contends that a rafting trip necessarily involves transportation from one place to another. Even if such transportation incorporates entertainment, the policy does not exclude transportation in which entertainment is offered. She explains that the district court incorrectly superimposed a Texas common law requirement on the policy definition of common carrier – that the primary purpose of the entity be the transporting of people or goods. Further, the similarities between the policy and common law definitions should not override that the policy has no language limiting "common

carrier" to an entity whose primary business is transportation. Because the policy definition controls in case of conflict, she argues that whether Rios Tropicales was a common carrier under Texas common law is immaterial. *See Provident Life & Accident Ins. Co.*, 128 S.W.3d at 219 (disapproving of prior case law "to the extent that the language [in those cases] suggests that it is proper to disregard defined terms in a policy in favor of definitions not expressed in the parties' written agreements").

We disagree with characterizing the district court's analysis as looking beyond the contract definition to impose a requirement not included in the policy. Instead, the court looked to common law for assistance in interpreting undefined terms within the policy's common carrier definition. There were some definitions. The policy defined common carrier as "any licensed land, water or air conveyance operated by those whose occupation or business is the transportation of persons for hire." It did not define, though, what it means to be in the "occupation or business" of "transportation" for hire.

We also conclude that undefined terms are not *per se* ambiguous terms. Undefined policy terms are given their plain, ordinary meaning, if such a meaning can with some clarity be determined. *Am. Nat'l Gen. Ins. Co.*, 274 F.3d at 323. Accordingly, the district court properly looked to Texas common law to seek the ordinary meaning of these undefined terms. *Cf. Tenaska Frontier Partners, Ltd. v. Sullivan*, 273 S.W.3d 734, 737 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("In determining the ordinary meaning of an undefined term, Texas courts have consulted the term's common-law usage, interpretation when used in other statutes, and definitions in secondary sources.").

We have already reviewed the Texas law on which the district court properly relied. Though the policy definition of common carrier did not include the phrase "primary purpose," the plain or ordinary meaning of "occupation or business" encompasses a primary purpose requirement. An entity's occupation

or business is transportation for hire only if transportation is the primary function of the entity in question. Transportation is incidental to the primary purpose of entertaining rafting participants. Accordingly, Rios Tropicales is not a common carrier under the policy, and the district court properly granted summary judgment in favor of National Union. Having so found, we need not consider other policy terms that allegedly barred coverage.

In addition to denying coverage under the policy, the district court also granted summary judgment in favor of National Union on counterclaims for breach of contract, breach of express and implied warranties, breach of the duty of good faith and fair dealing, and breach of Texas's prompt payment of claims statute. The court concluded that because National Union was correct in denying benefits under the policy, it was entitled to such judgment.

Ms. McMurray maintains the court erred in failing to grant judgment in her favor on all of her counterclaims. However, the only counterclaim for which any argument is made on appeal is her assertion that National Union violated Texas's prompt payment of claims statute. A failure to provide meaningful legal or factual analysis of the other issues constitutes a waiver. *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) (per curiam). Under the prompt payment of claims provision, there can be no liability unless the insurance claim should have been paid. *See Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (construing a substantially similar prior codification of Texas's prompt payment of claims statute). Accordingly, judgment in favor of National Union was proper on allegations with respect to the prompt payment of claims statute.

We AFFIRM.